UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| TABETHA RADER, *as Administratrix of the Estate of James Hook*,<br><br>Plaintiff,<br><br>v.<br><br>PRINCIPLE LONG TERM CARE, INC., *et al.*,<br><br>Defendants. | Civil No. 5:19-cv-00487-GFVT<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Tabetha Rader seeks leave to amend her Complaint and name two non-diverse defendants and, contemporaneously, moves to remand this matter to state court. Defendants oppose both motions, arguing Ms. Rader is improperly attempting to destroy the Court's diversity jurisdiction. For the reasons that follow, Plaintiff's Motion to Amend and Motion to Remand are **GRANTED**.

**I**

Ms. Rader, a Kentucky resident, first filed suit in Nicholas County Circuit Court on November 21, 2019, as administratrix of the estate of her deceased father, James Hook. [*See* R. 1-1 at 3.] Ms. Rader brought various tort claims stemming from Defendants' alleged negligence during Mr. Hook's stay at Johnson Mathers Nursing Home. *Id.* at 7–21. In her initial complaint, Ms. Rader named Doris Ecton co-defendant "upon information and belief" that Ms. Ecton was the nursing home's administrator at the relevant time. *Id.* at ¶ 8.

On December 16, Defendants removed the action to this Court based on diversity of citizenship. [R. 1 at 2.] The next day Ms. Ecton filed a Motion to Dismiss, arguing she was not

a proper party because she retired prior to Mr. Hook's stay at the nursing home. [R. 10 at 2.] Upon learning of Ms. Ecton's retirement, Ms. Rader filed an amended complaint in state court on December 18. [R. 11 at 2.] The amendment sought to replace Ms. Ecton with two new defendants, Truly Pennington and Joni Gosser, the administrators during Mr. Hook's stay. *Id.* On January 6, 2020, Ms. Rader filed a Motion to Remand in this Court on the basis that the addition of Ms. Pennington and Ms. Gosser, both Kentucky residents, "destroy[ed] this Court's diversity jurisdiction." *Id.* at 2–3. Defendants maintained the Court had jurisdiction because Ms. Ecton was not a proper Defendant to begin with, and Ms. Rader's attempt to amend her complaint in state court was ineffectual. [R. 15 at 2.]

On April 8, the Court dismissed Ms. Ecton, finding she was fraudulently joined, and denied Ms. Rader's Motion to Remand. *Id.* at 2–5. The Court also held Ms. Rader's amended complaint filed in Nicholas County had no effect and provided an opportunity for her to properly seek leave of the Court to join Ms. Pennington and Ms. Gosser. *Id.* at 4. Ms. Rader now moves contemporaneously for leave to amend and to remand. [R. 16; 16-1 at 9.] Defendants oppose both motions and argue federal jurisdiction is appropriate. [R. 17 at 2.]

## II

### A

Federal Rule of Civil Procedure 15 permits a court to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Sixth Circuit has explained that "where the underlying facts would support, a motion for leave to amend should be granted, except in cases of undue delay, undue prejudice to the opposing party, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or futility." *Duggins v. Steak'n Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999).

However, when a case is removed based on diversity, and an amendment would divest the court of that jurisdiction, Congress has left the decision to the discretion of the courts. 28 U.S.C. § 1447(e). Though the Sixth Circuit has yet to address the issue directly, district courts within this Circuit review four factors in determining whether to grant leave in these circumstances: "(1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether the plaintiff has been dilatory in seeking amendment; (3) whether the plaintiff will be significantly prejudiced if amendment is not allowed; and (4) any other equitable factors." *Cooper v. Thames Healthcare Group, LLC*, No. 13–cv–14–GFVT, 2014 WL 941925, at *2 (E.D. Ky. Mar. 11, 2014) (quoting *Premium Fin. Grp., LLC v. MPVF LHE Lexington LLC*, No. 5:13–CV–362–KKC, 2014 WL 112308, at *4 (E.D. Ky. Jan. 9, 2014)). The first factor is "often of 'paramount importance' because the ultimate question is whether the primary purpose of the proposed joinder is to divest the federal forum of jurisdiction." *Brandenburg v. Stanton Health Facilities, L.P.*, No. 5:14–cv–183–DCR, 2014 WL 4956282, at *2 (E.D. Ky. Oct. 2, 2014) (quoting *Bridgepointe Condominiums, Inc. v. Integra Bank Nat'l Ass'n*, No. 08–475–C, 2009 WL 700056, at *2 (W.D. Ky. Mar. 13, 2009)).

**B**

**1**

The first factor considers the purpose of the amendment and whether the plaintiff seeks to destroy the Court's jurisdiction. *Cooper*, 2014 WL 941925, at *2. Here, Ms. Rader filed the Motion to Amend and Motion to Remand in the same pleading. [*See* R. 16.] Defendants argue this indicates she seeks to destroy diversity. [R. 17 at 3–4.]

Courts sitting in diversity often find the concurrent filing of a motion to amend and a motion to remand implies motive to destroy diversity jurisdiction. In *Cooper*, for example, the

3

plaintiff knew the identity of the nursing home's administrator from the outset of litigation yet did not seek to add the administrator as a defendant until after removal. *See Cooper*, 2014 WL 941925, at *3 ("Cooper's Estate was aware of Gidron and her position at the time of the filing of the original complaint in state court."). Concurrent with the motion to amend, the plaintiff moved to remand. *Id.* at *4. On these facts, the court inferred the plaintiff intended to destroy diversity jurisdiction. *Id.* at *4.

But the facts of this case are distinguishable. Ms. Rader named who she believed to be the nursing home administrator in her original Complaint. [R. 16-1 at 7.] In doing so, she relied on Defendants' license with the Kentucky Cabinet for Health and Family Services, which listed Ms. Ecton as the administrator of Johnson Mathers Nursing Home. *Id.* It was only after Defendants removed and responded that Ms. Rader learned she had the wrong administrator. [*See* R. 10 at 2.] This is simply a case of mistaken identity and, given Ms. Rader's good faith effort to discern the identity of the administrator, her mistake was reasonable. Like in *Crail v. Elsmere Health Facilities, LP*, "[t]he fact that Plaintiff[] contemplated naming these Defendants from the beginning suggests that these parties were not later added as an attempt to defeat federal jurisdiction but rather because Plaintiff[] had discovered their identity." No. CV 17–2–DLB–CJS, 2017 WL 2952274, at *8 (E.D. Ky. July 10, 2017). Thus, although Ms. Rader filed the Motions to Amend and Remand simultaneously, she sought to name the correct administrators in her original complaint. This distinguishes the instant case from *Cooper* and weighs in favor of granting the motions.

Still, Ms. Rader's good faith effort to fix the initial pleading error and identify the proper administrators does not by itself warrant their joinder. As part of the first factor, courts also consider whether a plaintiff sufficiently pleads state law claims against defendants. *See Crail*,

4

2017 WL 2952274, at *8.  As explained by the Sixth Circuit in the fraudulent joinder context, the question here "is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved."  *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (quoting *Tedder v. F.M.C. Corp.*, 590 F.2d 115, 117 (5th Cir. 1979)).

Ms. Rader alleges Ms. Pennington and Ms. Gosser were negligent in caring for Mr. Hook.  [R. 16-2 at ¶¶ 46–51.]  Under Kentucky law, a person is liable for negligence when there is "(1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) injury to the plaintiff; and (4) legal causation between the defendant's breach and the plaintiff's injury."  *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012).  Specifically, Ms. Rader alleges Ms. Pennington and Ms. Gosser owed Mr. Hook duties of care consistent with various Kentucky statutory provisions and that the administrators breached these duties by failing to take numerous actions.  *Id.* at ¶¶ 48, 52–58.  Finally, she states that as a direct and proximate result of the alleged conduct, Mr. Hook suffered physical and mental injuries.  *Id.* at ¶ 58.

These allegations mirror those in *Crail* where, similarly, plaintiff brought suit against administrators of a Kentucky nursing home.  *See Crail*, 2017 WL 2952274, at *4 ("Plaintiffs allege that, as a direct and proximate cause of the negligence of all Defendants, Mr. Crail suffered injuries that resulted in his death.").  The *Crail* court found that plaintiffs sufficiently stated a colorable negligence claim against the individual administrators.  *Id.* at *4–6.  The court explained that, "[b]ased on Kentucky case law, there is, 'at the very least, potential liability on behalf of nursing homes, as well as their administrators and other personnel, for injuries sustained by residents under their care.'"  *Id.* at *5 (citing *Lindsey ex rel. Estate of DeVane v. Kentucky Med. Inv'rs, Ltd.*, No. 05-cv-116-DLB, 2005 WL 2281607, at *5 (E.D. Ky. Sept. 19, 2005) (citation omitted).  Based on the similar allegations in Ms. Rader's amended complaint, on

first blush, it appears she sufficiently pleads colorable claims under Kentucky law. And, at this early stage, it is prudent to allow the better suited authorities adjudicate the viability of Ms. Rader's claims. *See Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 595 (E.D. Ky. 2011) ("Instead of requiring federal courts to venture their best guess at whether a state-law claim is colorable, it makes much more sense to leave the decision to the state courts, who are experts on questions of state law.").

Ultimately, the circumstances surrounding the motion to amend indicate that Ms. Rader is not attempting to join Ms. Gosser and Ms. Pennington in an attempt to defeat diversity jurisdiction. The first factor weighs in favor of allowing the amendment.

**2**

Analysis on the first factor bleeds into the third. The third factor considers whether the plaintiff will be prejudiced by denying the motions. *Cooper*, 2014 WL 941925, at *2. Defendants do not dispute the colorable nature of Ms. Rader's claims in the amendment. Rather, they argue the amendment is unnecessary because she could sufficiently recover without naming the individual administrators as defendants, in light of *respondeat superior*. [R. 17 at 4.]

"Under the doctrine of respondeat superior, an employer can be held vicariously liable for an employee's tortious actions if committed in the scope of his or her employment." *O'Bryan v. Holy See*, 556 F.3d 361, 383 (6th Cir. 2009) (quoting *Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 56 (Ky. 2008)). Courts find amendments to join employees unnecessary where the employers are already defendants, provided the amendment only seeks to name the employees in their professional capacities. In *DeLong v. Arms,* the Court stated, "[t]he employee whose negligence caused the plaintiffs' injuries is not a necessary or indispensable party to an action to establish the employer's respondeat superior liability." 251 F.R.D. 253, 256 (E.D. Ky. 2008).

6

Ms. Rader's amendment names Ms. Pennington and Ms. Gosser in their capacities as administrators of Johnson Mathers. [R. 16-2 at ¶¶ 8–9.] As noted, Defendants invoke *respondeat superior* and accept all responsibility for their employees' conduct. [R. 17 at 7.] Ms. Rader disputes neither the doctrine nor Defendants' position. Thus, the doctrine likely applies, and Ms. Rader does not need to join the administrators to be justly compensated if she prevails on the merits.

However, this does not end the inquiry. The question under this factor is whether Ms. Rader would be prejudiced if the Court denied her Motions. *Cooper*, 2014 WL 941925, at *2. In the circumstances of this case, even if the administrators are not necessary for her to recover on the merits, Ms. Rader may still be prejudiced in other ways. True, in *Cooper*, the Court applied *respondeat superior* in similar circumstances as this. *Id.* at *4 (finding the plaintiff may obtain full relief without joining the administrator because the claims were based on conduct occurring solely in the course of her employment at the nursing home). But in *Cooper* the plaintiff knew the correct administrator from the outset of the litigation, and thus had ample opportunity to name them as a defendant. *Id.* ("Cooper's Estate was aware of Gidron and her position at the time of the filing of the original complaint in state court."). So, there was no prejudice to plaintiff in denying an opportunity that was already available at the state court level. *Id.*

Here, Ms. Rader did not spoil the opportunity and, instead, named who she reasonably believed was the administrator in her initial Complaint. [R. 16-1 at 7.] As explained above, she believed Ms. Ecton was the administrator based on Defendants' license with the state and did not realize this was not the case until *after* removal. *Id.* Practically speaking, it would prejudice Plaintiff to deny her amendment when her good faith reliance on Defendants' registration is part

7

of why she must amend at all.  Thus, while joining the administrators is not necessary for Ms. Rader to recover, denying her amendment would invite prejudice and offend the notion of fairness in justice.  Consequently, the third factor is neutral.

### 3

The second factor considers whether the plaintiff was dilatory in seeking to amend. *Cooper*, 2014 WL 941925, at *2.  Courts in this district find plaintiffs are not dilatory where they attempt to amend within a reasonable amount of time.  For example, in *Lawson v. Lowe's Home Centers, LLC*, the court found this factor weighed in favor of plaintiff where, "[d]espite plaintiff's procedural error, it is clear that she intended to file an amended complaint . . . less than three months after the filing of the original complaint, less than one month after she learned the identities of the . . . employees through discovery, and less than two weeks after Lowe's removed the case to this Court."  No. 5:13–cv–374–KKC, 2015 WL 65117, at *5 (E.D. Ky. Jan. 5, 2015). Conversely, the court in *Cooper* explained this factor weighed against plaintiff where he "had knowledge of the reason for the amendment the entire time . . . ."  2014 WL 941925, at *5.

Here, relying on Defendants' official registration, Ms. Rader did not know of the correct administrators until after Defendants removed and answered. [R. 16-1 at 7.]  In this way, this case is similar to *Lawson*.  Though her procedure was flawed, Ms. Rader attempted to amend two days after removal, one day after learning of the correct administrators, and less than one month after filing the original Complaint. [R. 16 at 2.]  As such, she was not dilatory, and this factor weighs in favor of allowing the amendment.

### 4

The final prong permits the Court to review any other equitable factors.  *Cooper*, 2014 WL 941925, at *2.  Here, Defendants argue that as out-of-state parties they have significant

8

interests in remaining in federal court. [R. 17 at 8–9.] Ms. Rader asserts this concern is diminished because Defendants own and operate their business in Kentucky. [R. 16-1 at 9.]

Defendants rely heavily on the analysis in *Cooper* in support of their position. [R. 17 at 8–9.] There, when considering the fourth factor, the Court noted that generally a diverse defendant has a "substantial interest in proceeding in a federal forum." *Cooper*, 2014 WL 941925, at *5 (quoting *Bridgepoint Condominiums*, 2009 WL 700056, at *2). But this substantial interest must be viewed in context. Just as the first factor bleeds into the third, it is similarly tethered to the fourth. In *Cooper*, the first factor weighed against plaintiffs such that the Court inferred "that the true purpose of joining [the non-diverse defendant] [was] to destroy the jurisdiction of this Court." *Cooper*, 2014 WL 941925, at *4. So, when the Court reached the fourth factor, the equities already weighed heavily against plaintiff. In this context, the Court readily gave more weight to defendants' interest in the federal forum. *Id.* at *5.

This case presents the inverse scenario. Here, the first factor weighs in favor of granting Ms. Rader's motions because she pleads colorable claims against non-diverse defendants. So, unlike *Cooper*, there is no inference of an intent to destroy jurisdiction and the equities are not as clearly in Defendants' favor. Further, the Court is not convinced Defendants would be prejudiced in state court. They will be joined by two Kentucky residents and, more significantly, they own and operate the nursing home in Kentucky out of which this case arises. [R. 1-1 at ¶ 4.] In similar circumstances, the court in *Crail* found the diverse defendants' interest in proceeding in federal court did not meaningfully impact the analysis. *See Crail*, 2017 WL 2952274, at *8 ("Defendant Woodcrest also has significant ties to Kentucky. After all, this litigation arises out of an incident that occurred at a nursing home facility owned and operated by Woodcrest that is located in Kentucky."). Thus, the fourth factor weighs in favor of allowing the

amendment.

### III

The Section 1447(e) factors require this Court to inquire into the circumstances surrounding the proposed amendment and consider the respective interests of the parties. Here, Defendants may have a legitimate interest in remaining in federal court but, on the whole, the relevant factors weigh in favor of allowing the amendment and granting the motion to remand. The Court is satisfied that Ms. Rader is not seeking to destroy the Court's diversity jurisdiction in attempting to add Ms. Pennington and Ms. Gosser as Defendants. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Plaintiff Tabetha Rader's Motion to Amend the Complaint and Motion to Remand [**R. 16**] are **GRANTED**;

2. This case is **REMANDED** to Nicholas County Circuit Court for further proceedings; and

3. This case is **STRICKEN** from the Court's active docket.

This the 14th day of August, 2020.

Gregory F. Van Tatenhove
United States District Judge